### THE PEOPLE v. JULIUS DUPREE.

*Criminal law—Burglary—Evidence—Dwelling-house.*

1. Where a merchant enters his store in a city at the usual hour in the morning, though it be after daylight, and finds that it has been broken open and entered from the front door or window, it is contrary to good sense to say that the crime might have been committed after daylight, and therefore a respondent, charged with breaking and entering the building in the night-time, must be acquitted.

2. Where the front room of a building is occupied by the owner as a shoe shop, and is connected with the rear and overhead portion, which is used as a dwelling, the building is a dwelling-house, within the meaning of the burglary statute.

3. The testimony of the people in a burglary case tended to show that the respondent, while in the building on the day preceding the burglary, raised the window through which the entry was made just enough to remove the bolt by which it was fastened from the slot prepared for that purpose, and on the following night completed the raising of the window sufficiently to enable him to enter the building. And it is held that the contention that such testimony, if true, did not establish the offense charged, is untenable.

Error to Saginaw. (Gage, J.) Submitted on briefs November 2, 1893. Decided December 4, 1893.

Respondent was convicted of the crime of burglary, and sentenced to imprisonment in the State prison for five years. Judgment affirmed. The facts are stated in the opinion.

*Crane & Crane,* for respondent, contended:

1. Burglary can be committed only in a dwelling-house, or any other building within the curtilage, and naturally associated with the dwelling. Not so with a man's place of business. This shoe shop was strictly Mr. Winkler's place of business, and not his dwelling, or a place associated with it for domestic purposes. In any event, it was a fact to be determined by the

jury; citing *Stearns v. Vincent*, 50 Mich. 209; *People v. Shaugh-nessy*, 89 Id. 130; *Conners v. State*, 45 N. J. Law, 340; *State v. Dozier*, 73 N. C. 117.

2. The court erred in charging the jury that to open further an already open window is breaking the dwelling, under the law of burglary; citing 2 Bish. Crim. Law, § 91; Tiff. Crim. Law (3d ed.), 588; 4 Black. Com. 226; *Com. v. Strupney*, 105 Mass. 588; *People v. McCord*, 76 Mich. 200.

*A. A. Ellis*, Attorney General, and *Albert Trask*, ex-Assistant Prosecuting Attorney, for the people.

GRANT, J. The respondent was convicted of burglary under section 9132, How. Stat.

The evidence on the part of the people tended to show that the owner of the dwelling-house occupied the front room for a shoe shop, and the rear and overhead part as a dwelling. The shop was upon the ground floor, and had two windows, each about four feet from the ground. These windows had double sash; were without pulley weights; were fastened when raised, and bolted when down, by stops operated by springs. When the windows were closed, the springs threw the bolts into the slots in the cases, so that the window could not be raised without drawing the bolt. One of these windows was opened during the night of October 8, and three pairs of shoes were stolen. The owner closed the shades on the night of the 6th, and did not notice that the window was raised even an eighth of· an inch. On the morning of the 9th, on opening his shop, he found the window raised about 1½ feet. The respondent called at the house on October 6, between noon and 2 P. M., and asked for dinner. He asked permission to step into the shoe shop for the purpose of changing his pantaloons. This request was granted. The window was not broken. If the bolt was in the slot, the window could have been raised from the inside only. On Monday following the burglary, respondent had in his

possession, and offered for sale, a pair of shoes alleged to have been taken upon the night of October 8. On the following Wednesday, he sold a pair of shoes which were identified as one of the three pairs stolen on October 8. The complaining witness testified that he believed that the window was unfastened and raised on October 6 from the inside, and something placed under the sash so as to keep the bolt from entering the slot. The owner left the shop about the time it was necessary to light the lamps to see, and did not return to it till the next morning. No testimony was introduced on the part of the respondent. His counsel moved the court to discharge the respondent for the reason that the crime was not established against him. This the court refused.

It is contended on behalf of the respondent:

1. That no breaking or entering in the night-time was established.

2. That this shop was not a part of the dwelling-house.

3. That if the window was partially raised on October 6, and was further raised on the night of the 8th, the crime was not established.

We think the motion was properly overruled, and the case properly submitted to the jury.

1. It is apparent from the charge of the court that the record does not contain all the evidence bearing upon the question whether the breaking and entering were in the night-time. The court correctly instructed the jury as to the meaning of the term "night-time." It does not clearly appear that the complaining witness did not testify as to the time he entered his shop in the morning. It is stated in the people's brief that he arose about break of day, and before sunrise, and found the window open, and the shoes gone. The house was situated in a city. Its surroundings, and the location of the window, were competent and important facts in determining the question. Is it prob-

able, considering the public character of the place, that the breaking and entering were done in the daylight? When a merchant enters his store in a city at the usual hour in the morning, though it be after daylight, and finds that it has been broken open and entered from the front door or window, it is contrary to good sense to say that the crime might have been committed after daylight, and therefore the court must direct an acquittal. Such crimes are not committed in broad daylight, but in the night-time. The question was one for the jury, and not for the court.

2. The building was a dwelling-house, and occupied as such. The owner used one room as a shoe shop. This room was connected with the rest of the house, and was properly held by the court to be a part of the dwelling. *Pitcher v. People,* 16 Mich. 142; *Stearns v. Vincent,* 50 Id. 209.

3. The theory of the prosecution was that the respondent, when in the shop, either on the 6th or 7th of October (the court, in its charge, referred to the date as Friday, October 7), raised the window just enough to prevent the bolt from entering the slot, and there was evidence to sustain it. It is insisted that even if this was so, and the respondent raised the window on the following night, it did not establish the crime of burglary. We cannot agree with this contention. It is said in *Dennis v. People,* 27 Mich. 151:

"If an entry is effected by raising a trap-door which is kept down merely by its own weight, or by raising a window kept in its place only by pulley weight, instead of its own, or by descending an open chimney, it is admitted to be enough to support the charge of breaking; and I am unable to see any substantial distinction between such cases and one where an entry is effected through a hanging window over a shop door, and which is only designed for light above, and for ventilation, and is down, and kept down by its own weight, and so firmly as to be opened only by the use of some force, and so situated as to make

a ladder, or something of that kind, necessary to reach it for the purpose of passing through it."

We think the doctrine there enunciated covers the present case. If there had been no bolt, and respondent had raised the window and entered in the night-time, under all the authorities, he would have been guilty of burglary. Upon what reason can it be said that his removal of the bolt, or his raising the window a fraction of an inch, in the day-time, changes the character of his offense? If the owner had failed to see that the bolts were in place, or if something had been accidentally placed upon the window sill, which was of slight thickness, but sufficient to prevent the bolts from entering the slots, the raising of the window would have been a sufficient breaking to support the charge. *Rex v. Hyams,* 7 Car. & P. 441; *State v. Reid,* 20 Iowa, 421; *Lyons v. People,* 68 Ill. 280. How can the act be relieved of criminality by secretly fixing the window in the day-time so that the bolt or lock will not be effective, and thus render the perpetration of the crime more easy and certain? There is no reason in such a rule. In *Lyons v. People,* the door was left unlocked, and the court was requested to instruct the jury that, in order to constitute the crime, it must appear that the door was secured in the ordinary way. The supreme court, in determining the question, said:

"We are not aware of any authority which goes to the extent of these instructions. To hold that the carelessness of the owner in securing and guarding his property shall be a justification to the burglar or thief would leave communities very much to the mercy of this class of felons. It would in effect be a premium offered for their depredations, by the removal of the apprehension of punishment. Whether property is guarded or not, it is larceny in the thief who steals it. When a door is closed, it is burglary for any one, with a felonious intent, to open it, and enter the house, in the night-time, without the owner's consent; and it makes no difference how many bolts and bars might have been used to secure it, but which were neglected."

The language of the court was perhaps too broad in stating that if the window was raised any distance, but was not sufficient to permit the defendant to enter, and he raised it further, it would be breaking, in the meaning of the law; but the entire evidence was to the effect that it was raised so little as not to attract the notice of the occupant. We therefore think that the jury could not have been misled by the language.

4. The sixth assignment of error is "that the court erred in the charge concerning circumstantial evidence, and its sufficiency to warrant conviction for burglary." Respondent's counsel, in their brief, do not point out wherein the charge is claimed to be erroneous. We infer the claim to be that there were no circumstances pointing to guilt. The record does not set forth the evidence, and we cannot, therefore, hold there was error, since the charge is correct, if there were circumstances to which it was applicable. It appears from the charge that the people introduced evidence of representations made to the complaining witness which were false, and tended strongly to indicate guilt. There was evidence, also, of other material facts. The question was clearly one for the jury.

5. Other errors are assigned upon the charge of the court, but we deem it unnecessary to refer to them, as they involve elementary principles. A careful examination of the charge shows that the court properly instructed the jury what elements constitute burglary, and as to the presumption of innocence and reasonable doubt.

Judgment affirmed.

The other Justices concurred.