## STATE v. RICHARDS.

### No. 1654 (81 Pac. 142).

1. BURGLARY—ELEMENTS OF OFFENSE—TIME OF COMMISSION—PROOF. Under Revised Statutes 1898, section 4334, defining "burglary" as entering "in the nighttime," etc., and section 4338, defining "nighttime" as the period between sunset and sunrise, a larceny, to constitute burglary, must be committed in the nighttime, and affirmative proof that it was so committed must be adduced; but such proof need not be direct, but may be circumstantial, in character.

2. SAME—EVIDENCE—SUFFICIENCY.—Evidence that the place burglarized, which was a store, was locked up at dark; that the manager

arose before sunrise, and spent nearly all the time between that time and the time when he opened the store (about an hour after sunrise), in plain view of the store, where he could have seen any one leaving it; and that on arriving at the store he found the door broken open and the things taken— was sufficient to authorize the jury to find that the burglary was committed in the nighttime.[1]

(Decided May 27, 1905.)

APPEAL from District Court, Sanpete County; Ferdinand Ericksen, Judge.

Samuel Richards was convicted of burglary, and appeals.

AFFIRMED.

*W. D. Livingston* for appellant.

*M. A. Breeden,* Attorney-General, for the State.

BARTCH, C. J.

The defendant was convicted of the crime of burglary, alleged to have been committed on September 28, 1904, by unlawfully, feloniously, and forcibly entering a store in the nighttime at Fountain Green, in Sanpete county, with intent to commit larceny. He now, on appeal, insists that there is no proof whatever to show that the breaking was done and entry of the store made in the nighttime, and that therefore the court erred in submitting the case to the jury. Upon careful examination, however, we are clearly of the opinion that there is ample proof to sustain the conviction and judgment, under our statute, and that there is no reversible error in the record.

Section 4334, Revised Statutes 1898, so far as material here, provides:

"Every person who, in the nighttime, forcibly breaks and enters, or without force enters through any open door, window, or other aperture, any house,

---

[1] State v. Miller, 24 Utah 312, 67 Pac. 790, distinguished.

. . . store, . . . with intent to commit larceny or any felony, is guilty of burglary." Section 4338, Revised Statutes 1898, reads:

"The phrase 'nighttime,' as used in this chapter, means the period between sunset and sunrise."

It is true that under these provisions larceny committed, even by forcible breaking and entry, at any other time than in the nighttime, between sunset and sunrise, does not constitute burglary. The time when the act was committed is an essential element of the offense, under the statute, the same as at common law. Indeed, as to time, the statute is but declaratory of the common law. The fact, therefore, that the offense was committed in the nighttime, must be affirmatively proven. This may be done, however, by circumstantial evidence. The prosecution is not limited to direct evidence of the time of the offense, or positive statements of the witnesses that the offense was committed after sunset and before sunrise. That it was committed in the nighttime may be shown by proof of circumstances which convince the mind of the fact beyond a reasonable doubt, as well as by direct evidence. (6 Cyc., 240-242.) If this were otherwise, many midnight burglaries would go unpunished, for such offenses are always secretly committed, when no one is, or is supposed to be, present to mark the time, and generally when nothing but circumstances can reveal it.

In the case at bar it appears in evidence that on the evening of September 28, 1904, at dark, about seven o'clock, the lights already burning, the manager locked up the store and went home; that the next morning, about seven o'clock, when he opened the store, he found the back door unlocked, the money drawer broken off from its place, the money which had been left in it gone, about a dozen pearl-handled pocketknives and five revolvers missing, and the two lower lights in the office window, which were sound when he left in the evening, and the sash between them, broken out, the sash having been whittled out; that the window was about ten feet above the ground on the outside, and about four feet above the floor on the inside, of the store; that there was a fence about eight feet

from the window, and a plank had been used from the top of the fence to the window, and was either on the fence or leaning against the store when the burglary was discovered, an ax also having been left over the fence, close by the window; that the back door of the store, which was found unlocked when the burglary was discovered, was in plain view of the manager's residence, which is about twenty-five yards south of the store, and from the residence one could see close to the window, but not right at it; that on the morning of the 29th of September, when the offense was discovered, the manager arose at a quarter to six o'clock, and the sun rose at 5:53; that about one-half of the time intervening between a quarter of six and seven o'clock, when he went to the store, he spent outside of the house, doing chores about his corral, where he had a plain view of the store, and chopping wood; that about twenty minutes of the balance of the intervening time he spent in his kitchen, eating breakfast, and, from his position at the breakfast table, could have seen any person going out of the back door of the store; and that from the time he arose, at a quarter of six, to seven o'clock, when he opened the store, he saw no person about the premises, nor heard anything that attracted his attention. Respecting his actions that morning the manager, in part, testified: "I was working behind my store in my corral and about my premises before sunrise. From about daylight I was forward and back to the corral, out and in, and then I went to the store. I did not see any one around that morning, and there was nothing to attract my attention to the store at any time that morning, when I was doing my chores, dressing myself, or eating my breakfast —nothing until I went to the store." The evidence also shows that on the evening of September 28, 1904, between five and six o'clock, the prisoner called at the residence of J. H. Jensen, about one mile from Fountain Green, took supper there, and, after supper, left; going in the direction of Fountain Green, and saying he was hunting work. On October 2, 1904, he was arrested near Payson, Utah, about forty miles distant from Fountain Green, and then tried to escape. At the time of his arrest he had the stolen goods in his possession, and

they were identified by witnesses at the trial. Further reference to the evidence would seem needless, although there is other proof of similar import.

Under such circumstances as are here revealed by the evidence, and considering the surroundings of the place, can there be any probability or any doubt that the burglar chose the cover of darkness to hide his proceedings? Would it be reasonable to infer that the prisoner waited all night, until after daylight, when the manager of the store was doing his chores and was about the place, to break the window and do what the evidence shows was done to effect an entrance into the store? It is manifestly incredible that any one could have made an entrance into the store, in the way that was made, after the manager was working about the place, and not have attracted his attention. Nor would it be reasonable to suppose that a thief would take such chances, when he could accomplish his purpose under cover of night. The surroundings, and the location of the window, of the residence, and of the corral, and the presence of the manager of the store about the premises after daylight, all render it utterly improbable that the crime was not committed in the nighttime. Such crimes under such conditions are not committed in broad daylight, but under the security from detection and apprehension which the night affords, when sleep has disarmed the owner and rendered his premises defenseless. Clearly, under the evidence in this case, the question of time was one for the jury, and was properly submitted for their determination.

In *People v. Dupree,* 98 Mich. 26, 56 N. W. 1046—a case similar to the one at bar—it was said:

"When a merchant enters his store in a city at the usual hour in the morning, though it be after daylight, and finds that it has been broken open and entered from the front door or window, it is contrary to good sense to say that the crime might have been committed after daylight, and therefore the court must direct an acquittal." (*People v. Getty,* 49 Cal. 581; *People v. Tracy,* 121 Mich. 318, 80 N. W. 21; *Williams v. State,* 60 Ga. 445; *People v.*

*McCarty,* 117 Cal. 65, 48 Pac. 984; *State v. Bancroft,* 10 N. H. 105; *State v. McKnight,* 111 N. C. 690, 16 S. E. 319; *Taylor v. Territory* [Ariz.], 64 Pac. 423; *State v. Johnson,* 33 Minn. 34, 21 N. W. 843.)

The case of *State v. Miller,* 24 Utah 312, 67 Pac. 790, to which our attention has been called, is not in point. In that case the offense was not discovered until nearly two hours after sunrise, and there were no circumstances in evidence which warranted the jury in determining that the goods were stolen in the nighttime. When arrested the accused was trying to sell the goods, and claimed he had received them from another man. In this case the circumstances are of such a character as to show beyond a reasonable doubt that the crime was committed in the nighttime, and we cannot say that the conviction is not warranted by the proof.

We have carefully examined the record and all the questions presented by the appellant, and have discovered no reversible error.

The judgment is affirmed.

McCARTY and STRAUP, JJ., concur.