**Dayton J. BELGARDE, Plaintiff,**

v.

**John W. TURNER, Warden, Utah State Prison, Defendant.**

**No. C 95–69.**

United States District Court
D. Utah, C. D.

Aug. 6, 1969.

Dudley M. Amoss, Salt Lake City, Utah, for petitioner.

Vernon B. Romney, Atty. Gen. for the State of Utah, and Lauren N. Beasley, Asst. Atty. Gen., for respondent.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

The above-named plaintiff being authorized to proceed in forma pauperis filed his petition for a writ of habeas corpus in this court alleging that his conviction of the crime of second degree burglary in the Second Judicial District Court of the State of Utah was a result of violations of his constitutional rights by the state, threats and abuse by officers which allegedly resulted in a confession, the entry of a plea of guilty as a result of a promise of probation, and an ineffectual waiver of his right of counsel at arraignment. Perhaps implicit in the petition here, but not as expressly contended as it was in the habeas corpus proceeding before the state court by which state remedies are claimed to have been exhausted, is the further contention that the plaintiff did "not have sufficient education or knowledge of his rights to freely and voluntarily, intelligently and voluntarily, understand-ingly * * * (waive) the right to counsel and intelligently enter a plea of guilty to the charged offense of second degree burglary of which the evidence and circumstances surrounding the actual case do not in fact point towards."

The court has heard the evidence of the parties at an evidentiary hearing and has reviewed the transcript before the state court, as well as the memorandum decision by which after evidentiary hearing the Third Judicial District Court of the State of Utah denied the plaintiff's petition for writ of habeas corpus.

■ The memorandum decision last mentioned, upon the basis of an evidentiary hearing before Judge Hansen, and upon the basis of adequate evidence, fairly and fully disposes of plaintiff's contentions that a confession from him was coerced and that he was deprived of the right to counsel at arraignment. Upon the basis of the evidence before and findings of the state court, and also upon the basis of the evidence adduced before me, I find and conclude that there was no coercion used against the defendant to extract a confession from him, that no confession was used against him in any subsequent proceedings and that he was not deprived in any way of his right to counsel, he having been represented by counsel in the early stages of the proceedings against him in the state court which resulted in the burglary conviction and he having duly waived upon full explanation of his right to counsel by Judge Cowley representation by an attorney at the time of his arraignment and sentencing. Judge Cowley was especially circumspect in explaining to him his right to counsel, the fact that counsel would be provided without charge to him if he were unable to procure counsel through his own resources, and that he did not have to proceed without the services of counsel. To the extent that counsel was not provided, plaintiff voluntarily and understandingly waived counsel.

■■ Nor does the evidence indicate in any way that plaintiff was denied

his right to counsel at the time his parole was revoked by the State Board of Pardons. He was represented by counsel at the parole revocation proceedings, there was adequate basis for the judgment of the Board that his parole should be revoked, and this court beyond its responsibility to determine whether constitutional rights have been violated has no right to review or supervise the administration of the State Board of Pardons.

■ Whether the plea of guilty to the charge of second degree burglary was voluntarily and understandingly entered presents a more serious question. Since the state Supreme Court in case number 11,566, upon a petition raising this issue, summarily denied habeas corpus on April 1, 1969, we have concluded that plaintiff has exhausted his state remedies and this is not questioned by counsel for the state. If there is some inadequacy in the petition before this court on the issue of voluntariness of the plea, this should not obstruct a ruling here upon the point since the matter was explored without objection in the evidentiary hearing before me and has been argued and submitted. Pleadings may be deemed to conform with the proof.

Upon the charge of second degree burglary the petitioner appeared with the co-defendant before Judge Cowley of the Second Judicial District Court of the State of Utah. Before the matter was referred by the district court back to the committing magistrate for a preliminary hearing, the following was stated on the question of the charge:

"MR. JUDD (District Attorney's Office): If the County Attorney's Office has no objection we would have no objections.

"MR. MUKAI (Counsel for Defendant): He indicated he didn't think they would have any objection.

"THE COURT: Burglary in the second degree?

"MR. MUKAI: Yes, your Honor, it is a serious charge and we would like to take advantage of the presentation of the case.

"THE COURT: It was an automobile.

"MR. MUKAI: Yes, your Honor."

On November 18, 1963, after the preliminary hearing and upon arraignment in the district court, copies of the information were handed to each of the defendants and read aloud by the clerk. The only thing that was said on this day concerning the charge, most of the discussion relating to the waiver of an attorney, was this:

"THE COURT: All right, you get your own attorney and the court will set the case for plea for next Monday at 10 o'clock and you be here next Monday both of you to enter your plea of either guilty or not guilty to the charge. Do you understand the burglary in the second degree, nighttime burglary? Do you understand the penalty, not less than one nor more than twenty years in the Utah State Prison, do you understand that?

"MR. BELGARDE: Yes, sir."

On November 26, 1963, further discussion was had with regard to the question of the appointment of an attorney. After considerable discussion and an indication that the court would put the case over until the following Monday for a plea, the defendants indicated they wished to waive the right to an attorney and that they were ready to enter pleas. The following statements and no others were made bearing directly upon the question of voluntariness of the plea or the understanding of the plaintiff concerning it:

"THE COURT: Both of you were charged with burglary in the second degree. The penalty is not less than one nor more than twenty years in the Utah State Prison. Do you understand that?

"MR. BELGARDE: Yes, sir * * *

"THE COURT: Belgarde, what is your plea, guilty or not guilty?

"MR. BELGARDE: Guilty.

"THE COURT: The defendant Dayton Belgarde enters a plea of guilty. Both defendants enter a plea of guilty. How old are you Belgarde?

"MR. BELGARDE: Twenty * * *

"THE COURT: Belgarde, have you been in trouble before?

"MR. BELGARDE: Yes.

"THE COURT: Felony?

"MR. BELGARDE: One felony.

"THE COURT: Did you serve on it?

"MR. BELGARDE: I served for it. I never was on probation before * *

"THE COURT: I will refer the matter to the Adult Parole and Probation Department for a presentence investigation and report.

"MR. ALIRES: Will you explain to us how a reinstatement works?

"THE COURT: Well, this is a separate matter to consider, the question of reinstatement. This is a new case. You mean reinstatement on parole?

"MR. ALIRES: Yes.

"THE COURT: Well, you will either be sentenced or given probation—whatever the court determines. All right, that's all."

On December 4, 1963, the plaintiff Belgarde came before the state court for sentence. After inquiring about Belgarde's personal situation and his previous record and family, the following occurred:

"THE COURT: Well, now, this is the time set for sentence. And do either of you have any statement you want to make?

"MR. BELGARDE: No, sir, I don't believe so.

"THE COURT: This is a burglary in the second degree; isn't it, down here on 25th Street?

"MR. ALIRES: Yes, sir.

"THE COURT: And some other groceries in the trunk of the car?

"MR. BELGARDE: No, sir, in the back seat of the car.

"THE COURT: About what time? Two or three or four in the morning was it?

"MR. BELGARDE: No, sir, about 5:30.

"THE COURT: A.M.?

"MR. BELGARDE: Yes, sir.

"THE COURT: Early morning?

"MR. BELGARDE: Yes, sir.

"THE COURT: The sun was just coming up, the 20th of September? And you were driving back to Salt Lake?

"MR. ALIRES: Yes.

"THE COURT: And the officer stopped you?

"MR. ALIRES: Yes.

"THE COURT: Well, do you have anything you wanted to say?

"MR. ALIRES: No.

"THE COURT: You both intend to go back to prison; I guess you expected that. Is that the way you feel about it?

"MR. ALIRES: Yes.

"THE COURT: Now, at this time, as to Belgarde, it's the judgment of the court and the sentence of the law that you serve in the Utah State Prison for a term of not less than one nor more than twenty years, as provided by law * * * Now, when you boys get out of prison this next time—which one did the good job?

"MR. BELGARDE: Both of us had pretty good records in prison.

"THE COURT: Well, some of your prison record is very good. You do that again. And when you get out the next time, don't get in trouble again.

"MR. BELGARDE: I will think a lot before I do.

"THE COURT: You cooperate again both of you and keep out of trouble.

"MR. ALIRES: Yes, sir.

"THE COURT: And when you get out stay away from the drinking. All right, that's all and they're remanded to the Sheriff."

On such a record, serious questions arise as to the voluntariness and particularly as to the understanding nature of the plea. As stated by the Supreme Court in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, June 2, 1969:

" * * * In Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70, we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'

"We think that the same standard must be applied to determine whether a guilty plea is voluntarily made. For, as we have said, a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards. Douglas v. Alabama, 380 U.S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934.

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record."

Unlike the record in *Boykin,* the record before us here is not silent, but it is hardly better and in some respects it is worse, than a silent record. Without leaving the matter to a matter of presumption or supposition, perhaps consistent with the idea that advice actually was given, the record here expressly shows that the plaintiff did not have explained to him the nature of the charge, anything about possible defenses, the significance of nighttime burglary as compared to daytime burglary and other matters which would be necessary to understand in order to render a plea knowledgeable. The only vital thing the plaintiff was told was the extent of the possible punishment for second degree burglary, but in view of the peculiar circumstances of this case it was rather essential that the plaintiff have explained to him also what the punishment for third degree burglary would have been and, indeed, that there was such a thing as third degree burglary involving daytime activity, i. e., activity after sun-up.

Section 76–9–3, Utah Code Annotated 1953, provides that every person who in the nighttime forcibly breaks and enters or without force enters an open door, window or other aperture of any house, room * * * automobile, automobile trailer * * * with intent to commit larceny or any felony is guilty of burglary in the second degree. Section 76–9–5, provides that every person who in the daytime enters any dwelling house, automobile (etc.) with intent to steal or commit any felony whatever therein is guilty of a burglary in the third degree. Section 76–9–7 defines nighttime as "the period of time between sunset and sunrise".

To constitute second degree burglary, a burglary must be committed between sunset and sunrise and is not proved by evidence rendering it speculated whether committed before sun-up or after sun-up. State v. Miller, 24 Utah 312, 67 P. 790 (1902). In this case the alleged offense was committed on the 2nd of July, 1901, and it was noted that on that day the

sun rose at 22 minutes of 5 o'clock a. m. In State v. Richards, 29 Utah 310, 81 P. 142 (1905), it was held that to constitute a burglary (comparable to the present burglary in the second degree) the offense must be committed in the nighttime, and affirmative proof that it was so committed must be adduced, although the proof need not be direct but may be circumstantial in character. There it was noted that on the morning of the 29th of September, when the offense was discovered, the manager arose at a quarter to six o'clock and the sun rose at 5:53. See also State v. Farnsworth, 13 Utah 2d 103, 368 P.2d 914 (1962).

In the present case with respect to the relationship between the alleged offense and the occurrence of sunrise, the record leaves more questions than answers perhaps but suggests at least the reasonable possibility that the offense was committed at or following sunrise. As will be noted from the quoted extracts from the transcript, the plaintiff indicated that the offense was committed about 5:30 in the morning. The court mentioned "the sun was just coming up" but whether this was when the offense was supposed to have been committed or when the petitioner was picked up or whether the time was about the same, is uncertain from the record. The sun on the day in question probably arose shortly after 5:30 but the statement that the offense was committed at 5:30 was made by petitioner without any indication that he was being precise or that he realized the significance of the time, and the court itself related the time to sun-up. Considering the vital point involved, it would have been appropriate and, indeed, it would seem to have been required for the court in order to assure the voluntariness and understanding nature of the petitioner's plea to advise him of the importance of the time of the commission of the offense. Nothing was said about, nor is there anything in the record which indicates that plaintiff realized, the significance of this point as

between second degree burglary and third degree burglary.

It may well be that both the court and the defendant knew that the burglary clearly was committed during the nighttime and yet without the advice of counsel at the time and the suggestion in the record that indeed the offense was or could have been committed at sunrise this point furnished an additional indication of the insufficiency of the record to indicate that the plea was voluntary.

I do not base my decision upon any idea that ultimately the proof will or will not show that third degree burglary rather than second degree burglary was involved. Nor do I base my conclusion upon any overemphasis of the uncertainty as to the time of the alleged offense. Reference to that matter is only illustrative of the inadequacy of the waiver on the record.

On the whole record, and in view of *Boykin*, the writ should be granted and the plaintiff discharged from custody unless within twenty days the state permits the plaintiff to replead. It is so ordered.