**Charles WALTERS, Petitioner,**

v.

**Roy D. HARDEN, Respondent.**

**Civ. A. No. 69–639.**

United States District Court,
D. South Carolina,
Columbia Division.

April 8, 1970.

W. N. Moore, Jr., Columbia, S. C., court-appointed, for petitioner.

Daniel R. McLeod, Atty. Gen., and Emmet H. Clair, Asst. Atty. Gen., Columbia, S. C., for defendant.

OPINION and ORDER

DONALD RUSSELL, District Judge.

The petitioner is a State prisoner who, following indictment in Oconee County,

South Carolina, had plead guilty to that count of the indictment charging the receipt of stolen goods (Section 16–362, Code of South Carolina of 1962), and received a sentence of six years. After commencing service of such sentence, he filed two petitions in *habeas corpus* in the State Court. The grounds upon which the first of such petitions rested were:

(1) That the verdict was contrary to the weight of the evidence;

(2) That the verdict was not supported by substantial evidence;[1] and

(3) That he "was promised probation if he would plead guilty."

The petitioner concluded his petition with the statement that he felt his "lawyer was predijust (prejudiced) against me and did not try to defend me in all his power. I only seen (saw) my lawyer about twice." Specifically, he requested the appointment of counsel to represent him in such *habeas corpus* proceeding.

Acting promptly on the petition, the State Court appointed counsel to represent the petitioner in the proceedings in *habeas corpus* and, in due time, held a hearing. Prior to such hearing the petitioner had been brought from the State Penitentiary in Columbia to Walhalla to facilitate conferences between him and his appointed counsel. At the hearing, the transcript of the proceedings at which petitioner entered his plea was reviewed and statements were received from appointed counsel in the original proceedings, from appointed counsel in the *habeas corpus* proceedings, and from the Solicitor who had handled the prosecution. The petitioner, though, did not testify; in fact, it is not clear whether he was present.

The transcript of the proceedings, whereat the petitioner entered his plea, and which was reviewed at this first State *habeas corpus* hearing, evidences clearly the painstaking and exacting manner in which the Presiding Judge performed his duty of satisfying himself that the plea entered by the petitioner had been freely, voluntarily and intelligently made. Specifically, he inquired whether petitioner was "fully satisfied" with the representation given him by his appointed counsel, whether such appointed counsel had discussed his case "fully" with him, including his right to a jury trial and the possible sentences to which his plea exposed him, and whether anyone had "threatened, intimidated or coerced" him to plead guilty or made any promises to him. To all such inquiries, he replied in the negative. Finally, the Court asked him whether he was "pleading guilty because you (he) are (is) guilty." In answer to this question, the petitioner did not reply mechanically but, demonstrating his own understanding of the proceeding and the nature of his specific plea, he answered, "Yes sir, to the third count".[2] The third count of the indictment was the one charging the crime of receiving stolen goods. The Court, at this point, reviewed the petitioner's previous record. It indicated, among other things, one prior conviction for larceny, a second for burglary and larceny, a third of housebreaking and larceny, and a fourth, for receiving stolen goods. The Court then inquired anew of the petitioner whether his appointed counsel had done everything that he wished done in connection with his defense and whether he was satisfied with his representation. The petitioner expressed, in reply, satisfaction with his counsel's representation and requested that his counsel be per-

---

1. The Trial Court dismissed grounds (1) and (2) as inappropriate. As he remarked, both were without application to a guilty plea.

2. The petitioner's answer is significant. He evidenced by his answer his familiarity with his indictment and its three counts and wished to make clear that

he was pleading guilty only to the third count of the indictment. This third count charged a crime with which he had earlier been charged and of which he had been found guilty. He was thus pleading to a crime with which he was already acquainted. See, Smith v. Cox (D.C.Va.1969) 307 F.Supp. 773, 777, note 2.

mitted to make a statement on his behalf. His counsel then gave the petitioner's account of his connection with the stolen pistol. According to this version, petitioner had been with Thomas Moore a part of the night of the robbery, was later arrested for vagrancy, and upon his release early the next morning he had gone to a pool room where he had purchased for $10 from someone he did not know the stolen pistol. Petitioner recognized, according to the statement of his counsel made on his behalf at this time, that "a good pistol like that undoubtedly was 'hot'." [3] Finally, before sentencing the petitioner, the Court again explained to petitioner the possible results of his plea and inquired whether petitioner fully understood or wished to add anything to what his counsel had said. Being assured by the petitioner that he knew what he was doing, that he was guilty and that he wished to plead guilty, the court accepted the plea and imposed a sentence of six years. It might be added at this point, somewhat out of order, that when counsel appointed to represent the petitioner in the *habeas corpus* proceedings went over this transcript with the petitioner in preparation for the *habeas corpus* hearing, the latter remarked, "I don't know how we are going to get around that." [4]

Following the review of the transcript of the trial, the Court received statements from the counsel who had participated in the proceedings. Petitioner's appointed trial counsel detailed his connection with the petitioner's case. He confirmed petitioner's statement that he had seen the petitioner only two or three times before his plea. However, such counsel emphasized that, during such interviews, he discussed fully with the petitioner "the matter". And this state-

ment was confirmed by the petitioner in his interviews later with counsel appointed to represent him in the *habeas corpus* proceeding. The only complaint that petitioner expressed to his *habeas corpus* counsel was not directed at any want of diligence on the part of his trial counsel but dealt with the circumstance "that the Solicitor kept reducing the sentence (charges)" against him. As the Court remarked, this referred to the agreement of the Solicitor to accept a plea to the third count of the indictment and to dismiss the more serious counts. Particularly, the Court wished to be assured during the hearing by the court-appointed trial counsel that, prior to his plea, the petitioner had had fully explained to him the elements of the crime to which he was pleading, especially that he knew or had reasonable grounds to know that the goods he received had been stolen. Counsel stated that he had so explained the elements of the crime to which petitioner was pleading guilty. Finally, after calling on all counsel as officers of the Court to advise him of any promises of probation made the petitioner and being assured that there were none, the State Court refused the writ. From such denial no appeal was taken.

Thereafter, petitioner filed a second petition in *habeas corpus* in the State Court. His grounds in this petition were (1) that he was denied a preliminary hearing; [5] (2) that statements were falsely transcribed against him,[6] and (3) that he had been brought from the State Penitentiary to Walhalla for the purpose of a hearing. It is assumed, though this is not clear in the record, that the real complaint as incorporated in his third ground was that he had been given no opportunity to testify in his own behalf at the first State *habeas corpus* hearing.

3. See State v. White (1947) 211 S.C. 276, 280, 44 S.E.2d 741, where knowledge of the stolen character of the goods received was predicated in part upon belief that such goods were "hot".

4. It must be recognized that this conclusion of the petitioner was not without justification. See, for a similar situation,

Walker v. United States (6th Cir. 1970) 419 F.2d 1272, 1273.

5. Preliminary hearing is waived by subsequent plea of guilty. Moore v. Wainwright (5th Cir. 1968) 401 F.2d 525, 526.

6. There was no attempt to support this claim.

In any event, on the basis of the record in the earlier *habeas corpus* proceeding, the writ was again denied by the State Court and again the petitioner made no effort to appeal such denial.

The petitioner has now filed his petition for a writ of *habeas corpus* in this Court, basing his claim for relief on the denial of effective representation. He, also, referred to the fact that, at the hearing in *habeas corpus* in the State Court, he "was never heard".

■ It was not clear from the record before me that the petitioner had ever specifically raised in the State Court the issue of effective representation or that the State Court had ever ruled on such issue. Actually, the decision of the State Court was apparently limited to the third ground stated in the first petition, i. e., that petitioner was "promised probation if he would plead guilty." However, in his first petition, the petitioner had adverted—perhaps obliquely but in some detail—to the issue of ineffective representation and, in its hearing on such petition, the State Court did inquire into the satisfactoriness of appointed counsel, which, of course, went to that issue. I have accordingly assumed that such issue was presented, though perhaps not as fully or clearly as it should have been, to the State Court.[7] It is true, too, that the petitioner has not appealed to the State Supreme Court denial of either of his petitions. The failure to exhaust State remedies by appeal to the highest State Court is no perfunctory objection to the jurisdiction of a federal District Court to entertain a petition in *habeas corpus*. As 83 Har.L.Rev. 1094 puts it, "It is important that petitioners (in *habeas corpus* proceedings) reach state appellate courts, which can develop and correct errors of state and federal law and most effectively supervise and impose uniformity on trial courts." However, I am troubled in this case by the failure of the State Court to afford the petitioner the opportunity to be present at his hearing. While it seems clear that where the undisputed facts as established from the petition, return or traverse or from "incontrovertible facts such as those recited in a court record" show no cause for granting a writ, neither a hearing on the petition nor the production of the prisoner is required and the petition may be summarily dismissed, the rule is seemingly that, where there are issues of fact to be resolved in the proceeding and a hearing is necessary, the production of the petitioner at the hearing is proper. See Walker v. Johnston (1941) 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830; Note, 83 Har.L.Rev. 1189 (1970).[8] Leaving aside the question whether under the court record of petitioner's plea there was a basis for summary disposition of petitioner's application, the State Court did order a hearing, did take the testimony of counsel (though not under oath), did inquire into the facts set forth in the petition, but did not afford the petitioner an opportunity to be present or to testify.[9] Under these circumstances, I concluded to give the petitioner a full evidentiary hearing on his petition, to provide for his presence at the hearing and to afford him the opportunity to testify. Counsel was accordingly appointed to represent him in such hearing. The counsel so appointed has represented petitioner with both diligence and ability, for which the Court commends him.

Upon the hearing before me, it was conceded that on the morning following a store robbery in Walhalla, during

7. See Belgarde v. Turner (D.C. Utah 1969) 307 F.Supp. 936, 938.

8. For the rule applicable to proceedings under Section 2255, see Raines v. United States (4th Cir. 1970) 423 F.2d 526 (filed March 23, 1970).

9. In fairness, it must be noted that the Trial Judge was most searching in his inquiries of counsel and that he had brought the petitioner from the State Penitentiary in Columbia to Walhalla in order that he might assist his court-appointed counsel in preparing his case and in developing any facts helpful to his contentions. And the petitioner's court-appointed counsel reviewed fully with the Court all the facts given him by the petitioner.

which several pistols were stolen, the petitioner had possession of one of the pistols so stolen.[10] He sought to explain his possession.[11] He testified that, during the night of the robbery, he had been drinking, had been arrested, then released, and in the early morning after the robbery he had gone to a pool room in Walhalla. While there, someone whom he did not know and has not since seen offered to sell him the pistol in question. He identified one person, who, he said, had seen him purchase the pistol. His court-appointed counsel, however, stated that petitioner had not indicated that such person had seen the alleged purchase, only that, prior to his plea, the petitioner indicated that he had seen this individual the night before he allegedly purchased the gun but petitioner did not suggest to him that such person was present when the petitioner had purchased what the latter described as a "hot" pistol. At any rate a subpoena was issued for such person in this proceeding but it was, either impossible to locate him for service or the petitioner did not seek his testimony. Moreover, petitioner admitted he had purchased the pistol at a price considerably below its real value.[12] However he came into possession of the pistol and whether drunk or not, he was singularly anxious on this morning after the robbery to relieve himself of the possession. He persuaded a friend at the pool room, who, though apparently present, had not observed the petitioner purchase the gun from another party, to take the pistol to the latter's home and keep it concealed there for the petitioner.[13] He justified his appeal to his friend to keep the gun by suggesting that he feared he might be arrested for drunkenness and did not wish to be apprehended with a gun on his person.

In some way not explained in the record, the police authorities learned that the gun was in the possession of the petitioner's friend. When the friend was interviewed by the authorities, he told the authorities that he was merely keeping it for the petitioner. After being interrogated, the petitioner was arrested. At the next convening of the grand jury, he was indicted and counsel was appointed to represent him. He reviewed with his appointed counsel on two or three occasions his case. He denied that he was guilty of housebreaking and larceny but conceded readily both that he was guilty of the crime of receiving stolen goods as charged in the indictment and

10. Knowledge that the goods received were stolen is an essential element of the crime to which petitioner plead but, "Guilty knowledge is seldom susceptible of proof by direct evidence and may be proved by circumstances from which such knowledge may be inferred." State v. Atkins (1964) 244 S.C. 213, 216, 136 S.E.2d 298, 299. "* * * a belief without actual knowledge is sufficient." State v. Rountree (1908) 80 S.C. 387, 392, 61 S.E. 1072, 1073. And, "The Courts have uniformly held that the possession of the fruits of crimes by an individual recently after the commission of the crime justifies the inference that the possession is with knowledge that the property was stolen." Lee v. United States (8th Cir. 1966) 363 F.2d 469, 474, cert. den. 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227; United States v. Riso (7th Cir. 1969) 405 F.2d 134, 137–138, cert. denied, 394 U.S. 959, 89 S.Ct. 1306, 22 L.Ed.2d 560; Hale v. United States (5th Cir. 1969) 410 F.2d 147, 149–150, cert. denied, 396 U.S. 902, 90 S.Ct. 216, 24 L.Ed.2d

179; Thomas v. United States (4th Cir. 1926) 11 F.2d 27, 28; State v. Crawford (1893) 39 S.C. 343, 350, 17 S.E. 799.

11. Cf., Pearson v. United States (6th Cir. 1951) 192 F.2d 681, 689: "Such a possession must be accounted for in a straightforward, truthful way, and unless the jury finds the explanation reasonable and satisfactory, they may be warranted in returning a verdict of guilty."

12. See, United States v. Werner (2d Cir. 1947) 160 F.2d 438, 443, where Judge Learned Hand states:
"In prosecutions for receiving stolen property for obvious reasons one of the most telling indices of guilt is a low price paid by the receiver."
See, also, State v. Atkins, *supra*, 244 S.C. at p. 216, 136 S.E.2d 298.

13. Attempt at concealment is circumstance to be considered on issue of knowledge, Nakutin v. United States (7th Cir. 1925) 8 F.2d 491, 492, cert. den. 269 U.S. 585, 46 S.Ct. 201, 70 L.Ed. 425.

that he wished to plead guilty to such offense. He was not unfamiliar with the offense of receiving stolen goods, having been found guilty of such crime in February, 1964. His court-appointed counsel testified that, prior to his plea, he had gone over with the petitioner the elements of the crime charged in the third count of the indictment. And, before he entered his plea, he had had the Solicitor to read to petitioner and explain the several elements of the crime of receiving stolen goods. Thereupon, petitioner entered his plea of guilty to the crime of receiving stolen goods. It should be noted that petitioner's counsel was appointed on Monday at the convening of the term of Court and the conferences between petitioner and his counsel took place over the next few days prior to the entry of petitioner's plea on Thursday. When petitioner entered his plea, he was specifically asked by the Court whether he was guilty. Petitioner replied that he was.

There was some inquiry during the hearing, prompted largely by the Court itself, as to the value of the pistol stolen. This inquiry was prompted by the statement of the petitioner's trial counsel that he understood that the actual value of the stolen pistol was about $20. Since the statute creating the crime of receiving stolen goods makes a substantial difference when the stolen goods have a value of $20 and over and where they have a value under $20, I wished to be assured on the value of the stolen article. I recognized, of course, that the petitioner, through his counsel, had described at the trial the stolen article as a "good pistol" and one that, under petitioner's own statement, had been purchased for $10 at a grossly undervalued price. Nonetheless, I requested counsel to inquire and offer evidence of a value

of $20 or more for the stolen article. Unfortunately, the pistol itself had been again stolen but the Solicitor testified to a value of about $50 for the pistol. In view of petitioner's own description of the pistol, this valuation appeared reasonable.[14]

■ On the basis of this record, I conclude that the petitioner has wholly failed to sustain the burden of establishing that he was denied effective representation of counsel. It is true that his plea was entered within three days of the appointment of his counsel. It is equally true that he saw his counsel on only two or three occasions.[15] But he does not contradict his counsel's testimony that such counsel went over his case with him in detail and reviewed fully with him the elements of the crime to which he plead guilty. He does not deny that, when he entered his plea, he expressed complete satisfaction with his counsel and added that his counsel had done everything he wished. The petitioner admitted his guilt of the crime of receiving stolen goods. He denied guilt as to the other crimes charged in the indictment and in this his counsel sustained him. He has pointed to nothing that his counsel might have done that would have aided him. On the record, the appearance of his guilt was apparent. Both he and his counsel recognized it. He chose to plead guilty under those circumstances. He was fully cognizant of what he was doing and of the offense to which he was pleading. Whatever presumption of ineffective representation might have been created by the interval between counsel's appointment and petitioner's plea, there is in this record "adequate affirmative evidence to overcome the presumption of harm from the lack of time for preparation" by appointed counsel. Fields v.

---

14. It should be noted, too, that this pistol was only a part of the property stolen, which had a value, it seems, of several hundred dollars. And, in State v. Crawford, supra, 39 S.C. at p. 349, 17 S.E. at p. 801, the provision of the statute dealing with value of the stolen goods, which fixes the limits of permissible sen-

tence, was construed to refer to "not the value of the property found in possession of the defendant, but the value of the whole property stolen."

15. Foster v. Beto (5th Cir. 1969) 412 F. 2d 892, 893.

Peyton (4th Cir. 1967) 375 F.2d 624, 628; Smith v. Cox (D.C.Va.1969) 307 F.Supp. 773, 777.

Petitioner suggests that his plea was induced to some extent at least by his counsel's emphasis on the effect that his prior convictions might have on his defense and that for this reason he was denied proper effective representation. However, since he was without any other witness to explain his possession the morning after of the stolen weapon, the petitioner would have been forced to take the stand or leave such possession unexplained, with its possible harmful effect on the jury. Under those circumstances, his counsel would have been derelict had he not informed the petitioner of the consequences of his testifying in his own defense, i. e., that under those conditions, the prosecution could assail his credibility by establishing on cross-examination his prior convictions of crimes such as larceny and housebreaking, involving as they did moral turpitude. See State v. Millings (1965) 247 S.C. 52, 53, 145 S.E. 2d 422, 423; State v. Bing (1921) 115 S.C. 506, 509, 106 S.E. 573; 19 S.C.Law Q. pp. 51–2. For the Federal Rule, see United States v. Smith (5th Cir. 1970) 420 F.2d 428, 431. In bringing this matter to the attention of the petitioner, his counsel was only doing what was his clear duty to the petitioner and no claim of improper representation can be predicated by the petitioner on this account.

Finally, it should be observed that petitioner is no criminal novice suddenly caught up in the law's net. For years, he has been in and out of criminal court, generally on charges involving thefts and housebreaking. He understood court procedures and was familiar with the crimes charged in the indictment involved in this case. Fortunately for him, he had, prior to this plea, been dealt with generously by the courts. And his real complaint here is not inadequate representation but dissatisfaction with his sentence, which he, not unnaturally, thinks was too harsh. On this record, however, that provides no ground for the writ.

For the reasons given, it is plain that the petitioner is not entitled to relief herein and his petition is accordingly dismissed.

And it is so ordered.