2004 UT 5

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Peter Victor MONTOYA, Defendant and Appellant.**

No. 20010458.

Supreme Court of Utah.

Jan. 23, 2004.

Mark L. Shurtleff, Att'y Gen., Joanne C. Slotnik, J. Frederic Voros, Jr., Asst. Att'ys Gen., Carlos Esqueda, Cy Castle, Deputy Salt Lake Dist. Att'ys, Salt Lake City, for plaintiff.

Sharon Preston, Salt Lake City, for defendant.

DURRANT, Associate Chief Justice:

¶1 Defendant Peter Victor Montoya was tried and convicted on one count of criminal homicide, a first degree felony, and two counts of attempted criminal homicide. On appeal, defendant argues that the trial court erred in denying his motion for a new trial based on newly discovered evidence. Alternatively, defendant argues that he received ineffective assistance of counsel because the contested evidence was not produced at trial. Defendant also contends that the trial court erred in denying his motion for a directed verdict based on insufficiency of the evidence. We affirm.

## BACKGROUND

¶2 "We view the facts in the light most favorable to the jury verdict and recite them accordingly." *State v. Loose*, 2000 UT 11, ¶2, 994 P.2d 1237. On the night of May 16, 1997, sixteen-year-old Kelly Seal drove his younger brother, Matt Seal, and his friend, Greg Ulibarri, to Beck Street to watch drag races. During the course of the evening, the boys stopped at a combination Amoco station and Rainbo Mart to buy drinks and use the restroom. While there, Matt Seal noticed a red GMC truck squealing its tires as it maneuvered into position at the gas pump. The driver of the truck, identified as Russell Thornwall, exited the vehicle and began pumping gas. Matt Seal recalled that Thornwall was "throwing up his hands" and yelling "VLT," which Matt understood to be a gang reference.

¶3 The three boys left the gas station and began to drive back to the races, but returned shortly in order for Kelly Seal to use a payphone to respond to a page that he had received. Kelly Seal exited the car to use the phone, and Ulibarri soon joined him. Matt Seal stayed in the back seat of the car. Ulibarri and Matt Seal both noticed Thornwall still gesturing with his hands and yelling. Kelly Seal quickly finished his phone call, and he and Ulibarri returned to the car. By this time, Thornwall had pulled his truck behind the boys' Honda Civic and was revving the engine. At this point, the defendant exited the Rainbo Mart, crossed between the truck and the Honda, and entered the truck through the front passenger door. Matt Seal testified that he noticed a third passenger in

the truck who appeared to be sitting in the back seat.[1]

¶ 4 As Kelly Seal drove toward the station exit, the red truck came up along the right side of the boys' car and swerved towards them. Kelly reacted to avoid a collision. Matt Seal and Ulibarri saw the defendant leaning over the driver of the truck, looking directly into the Honda, and yelling. The boys testified that they heard two or three voices yelling "VLT" and "pussies." The truck moved behind the Honda again, following very closely with its headlights shining directly into the boys' car. Evidence produced at trial showed that the truck was a manual stick-shift and that Thornwall, the driver, was right-handed.

¶ 5 As Kelly Seal exited the station and began to turn left onto Beck Street, at least two[2] shots were fired from the truck, shattering the back window of the Honda and piercing the back right pillar of the body of the car. One bullet ripped through the right passenger seat and hit Ulibarri in his lower, right back. Another bullet struck Kelly Seal in the back of the head, killing him. The Honda coasted to a stop in the middle of Beck Street, and the red truck sped off to the right, squealing its tires. Matt Seal heard someone yell, "VLT rules."

¶ 6 On May 25, 1999, defendant was charged with one count of criminal homicide, a first degree felony, and two counts of attempted criminal homicide.[3] During the jury trial, after the presentation of the state's case-in-chief, defendant moved for a directed verdict. The trial court deferred ruling on this motion until defendant had presented his case, at which point, defendant moved to dismiss. The trial court took the motion under advisement. After the jury convicted defendant as charged, the trial court consid-

ered and then denied defendant's motions for a directed verdict and to dismiss.

¶ 7 The trial court sentenced defendant to a term of imprisonment of five years to life on Count I and a term of one-to-fifteen years each on Counts II and III, the sentences to run consecutively, with a one-year firearm enhancement on each count. On January 22, 2001, defendant moved for a new trial based on newly discovered evidence. This motion was also denied by the trial court. Defendant appeals.

## ANALYSIS

¶ 8 Defendant argues on appeal that the trial court erred in denying his motion for a new trial based on newly discovered evidence. Alternatively, he argues that he received ineffective assistance of counsel due to his counsel's failure to introduce certain evidence at trial. Defendant also contends that the trial court erred in denying his motion for a directed verdict, arguing that the evidence was insufficient to support the convictions. We will address the issues in the order presented.

## I. DENIAL OF DEFENDANT'S MOTION FOR A NEW TRIAL

¶ 9 Approximately one month following the conclusion of the jury trial, defendant filed a motion for a new trial, asserting that critical new evidence had become known to defense counsel. This "new evidence" consisted of statements from two witnesses: (1) a confidential witness, who would not reveal his identity but claimed to be the third person in the truck on the night of the shooting, and (2) Jason Thornwall, Russell Thornwall's older brother. The confidential witness was purportedly too frightened to come forward

---

1. At trial, there was some confusion as to the exact position of this third passenger. Although Matt Seal testified that the passenger appeared to be in the middle of the back seat, he also stated that the passenger could have been seated in the middle of the front seat. In any event, this third passenger remained unidentified and did not testify at trial.

2. The officer called to the scene testified that, although he could not conclusively determine

how many shots were fired, he ascertained that at least two and "possibly as many as four" bullets hit the victims' car.

3. After defendant was charged, but prior to trial, Russell Thornwall became the subject of a felony stop. Deputy Sheriff Rob Neilsen, testifying at defendant's trial, stated that Thornwall fled from police, ran behind a building, and fatally shot himself in the head.

but told a defense investigator that it was he, not Peter Montoya, who was the front seat passenger on the night in question and that Russell Thornwall was the shooter. The second witness, Jason Thornwall, stated that his brother, Russell, had talked to him about the incident and told him, "Pete [Montoya]'s in [jail] for something I did."

### A. Standard of Review

¶ 10 We afford trial judges "a wide range of discretion" in determining whether newly discovered evidence warrants the grant of a new trial. *State v. James*, 819 P.2d 781, 793 (Utah 1991). Thus, "[w]e review the denial of a motion for a new trial based on newly discovered evidence on the same basis as any other denial of a new trial motion—whether the trial court abused its discretion." *State v. Loose*, 2000 UT 11, ¶ 16, 994 P.2d 1237.

[5] ¶ 11 Evidence must meet three criteria in order to constitute grounds for a new trial: "(1) [i]t must be such as could not with reasonable diligence have been discovered and produced at the trial; (2) it must not be merely cumulative; [and] (3) it must be such as to render a different result probable on the retrial of the case." *James*, 819 P.2d at 793; *see also State v. Goddard*, 871 P.2d 540, 545 (Utah 1994) ("All three of these criteria must be met."). Since we conclude that the statements of both witnesses are inadmissible, these statements do not constitute evidence that would "render a different result probable" on retrial. Thus, the statements fail to fulfill the third requirement for granting a new trial.

### B. Statement of the Confidential Witness

¶ 12 In his motion for a new trial, defendant claimed that "following the trial, the defense was able to locate the actual third occupant of Russell Thornwall's truck." Defendant sought to introduce statements from this witness through the testimony of a defense investigator, Dennis Couch, because the witness was purportedly "tremendously frightened" to come forward. According to Mr. Couch's affidavit, the witness stated that, though he had not been involved in the shooting, it was he, not Peter Montoya, who was the front seat passenger in the truck and that Russell Thornwall was the shooter.

¶ 13 Since the witness himself refused to testify, the testimony of Mr. Couch consists of out-of-court statements being "offered in evidence to prove the truth of the matter asserted," and thus is paradigmatic hearsay. Utah R. Evid. 801. The statements of the confidential witness, therefore, are inadmissible unless they fall within the ambit of one of the hearsay exceptions.

¶ 14 Defendant suggests that the confidential witness's statements satisfy the "statement against interest" exception because, by so attesting, the witness places himself in the same position in the truck as the defendant, and consequently opens himself up to possible criminal prosecution. *See* Utah R. Evid. 804. However, the statement against interest exception, as with all of the exceptions under Utah Rule of Evidence 804, initially requires the unavailability of the witness. *See* Utah R. Evid. 804(a). Defendant has not shown that the confidential witness is unavailable for purposes of this hearsay exception.

[7] ¶ 15 We have previously stated that "for a witness to be constitutionally unavailable, it must be practically impossible to produce the witness in court. It is not enough to show that the witness would be uncomfortable on the stand or that testifying would be stressful. Every reasonable effort must be made to produce the witness." *State v. Webb*, 779 P.2d 1108, 1113 (Utah 1989) (citations omitted). This requires the proponent of the out-of-court statement to do his utmost to "procure the declarant's attendance by process or other reasonable means." Utah R. Evid. 804(a)(5).

[8] ¶ 16 Thus, in general, a witness will not be found unavailable until the proponent of the evidence demonstrates that he has used all reasonable means at his disposal to secure the attendance of the witness. *See State v. White*, 671 P.2d 191, 193 (Utah 1983) (finding witness was not unavailable where defense counsel merely stated that the witness was likely to assert his Fifth Amendment privilege against self-incrimination; the witness had to take the stand and personally

assert the privilege for his testimony to be unavailable); *State v. Chapman*, 655 P.2d 1119, 1121–22 (Utah 1982) (holding witness not unavailable where state made no attempt to secure attendance of the out-of-state witness through the Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceeding); *State v. Drawn*, 791 P.2d 890, 893 (Utah Ct.App.1990) (holding that where the state had subpoenaed each witness three times prior to trial, these efforts were sufficient to demonstrate unavailability for purposes of the hearsay exception); *Brown v. Harry Heathman, Inc.*, 744 P.2d 1016, 1018 (Utah Ct.App.1987) (finding service of process not necessary to show unavailability where reasonable, but ultimately unsuccessful, efforts were made to ascertain the address of a witness whose whereabouts were completely unknown).

¶ 17 Here, defendant has merely asserted that the confidential witness is fearful to come forward. Defendant has not demonstrated that he made any effort to compel the witness's attendance at the hearing on the motion for a new trial. Therefore, defendant has failed to show that the witness is unavailable for purposes of the statement against interest exception. Defendant has not indicated any other potentially applicable hearsay exception under which this testimony would be admissible, and we find none. We turn next to an examination of Jason Thornwall's statement.

### C. Statement of Jason Thornwall

¶ 18 After defendant's trial, Russell Thornwall's brother, Jason, contacted defense counsel to discuss the case. Jason said that Russell had spoken to him about the shooting and admitted to being the shooter. According to Jason, Russell stated that he "felt bad that Pete [Montoya] was locked up, when he (Russell) was the one that did it."

¶ 19 This statement, though hearsay, meets the initial requirements of the statement against interest exception. Russell Thornwall's death prior to defendant's trial renders him unavailable under the evidentiary rule, and the statement is plainly against his penal interest. *See* Utah R. Evid. 804(a)(4), (b)(3). However, rule 804 further

requires that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Utah R. Evid. 804(b)(3).

¶ 20 This requirement, which attaches to third-party confessions in a criminal case, renders defendant's proffered evidence inadmissible since defendant has failed to produce any corroborating circumstances that clearly demonstrate the trustworthiness of Jason Thornwall's statement. Indeed, it is difficult to imagine circumstances under which this statement would be less trustworthy. While it is conceivable that Jason Thornwall, out of a sense of familial duty, refrained from divulging Russell's alleged admissions during Russell's lifetime, he had ample opportunity to come forward during the four months after Russell's death and prior to defendant's trial, but chose not to do so. Instead, he waited some fourteen months after Russell purportedly made the admissions and did not reveal the information until well after Russell's close friend had been arrested, tried, and convicted of the crime. Defendant has offered no indicia of reliability in connection with this statement to recommend its admissibility. Consequently, this statement, like that of the confidential witness, fails to satisfy any exception to the rule against hearsay.

¶ 21 Because both witnesses' statements constitute inadmissible hearsay, this "newly discovered" evidence would be incapable of effecting a different outcome if the case were retried. Therefore, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

### II. INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 22 Defendant's second argument on appeal is that he was denied effective assistance of counsel in violation of the Sixth Amendment because his counsel failed to discover and produce a critical eyewitness at the time of trial. During the hearing on the motion for a new trial, defense counsel stated that, prior to trial, he had attempted to find the

third occupant of Russell Thornwall's truck. Counsel indicated that he was, in fact, able to locate this witness's mother but, finding her uncooperative, decided not to pursue the witness's whereabouts. Twelve days before trial, the state moved for a continuance in order to allow more time for discovery. Defendant's counsel vigorously opposed this motion, and the trial went forward as originally scheduled. Defendant asserts that if his counsel had simply stipulated to the continuance, and been otherwise diligent, counsel could have produced the third passenger in the truck, who, other than defendant himself, was the only eyewitness to the crime.

¶ 23 In determining whether a criminal defendant has been denied effective assistance of counsel, this court adheres to the test established in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim under the *Strickland* test, "a defendant must show (1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *Wickham v. Galetka*, 2002 UT 72, ¶ 19, 61 P.3d 978 (quoting *State v. Smith*, 909 P.2d 236, 243 (Utah 1995)) (internal quotation and further citation omitted). We emphasize that in making this evaluation, the court must "indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is[,] the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Templin*, 805 P.2d 182, 186 (Utah 1990) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052) (internal quotation omitted).

¶ 24 To prevail on the first prong of the test, a defendant "must identify specific acts or omissions demonstrating that counsel's representation failed to meet an objective standard of reasonableness." *Taylor v. Warden*, 905 P.2d 277, 282 (Utah 1995) (citing *Templin*, 805 P.2d at 186). Defendant contends that his counsel's "failure to discover and produce [a critical defense witness], or to request a continuance for the purpose of doing so," constituted ineffective assistance because "the failure to conduct a reasonable investigation into possible defense witnesses" is an indefensible omission on the part of counsel. *See Templin*, 805 P.2d at 188 ("If counsel does not adequately investigate the underlying facts of a case, including the availability of prospective defense witnesses, counsel's performance cannot fall within the wide range of reasonable professional assistance." (internal quotation and citation omitted)). Although failure to investigate may, in some cases, satisfy the first prong of the *Strickland* test, it is within counsel's discretion to make reasonable decisions regarding the extent to which particular investigations are necessary. *See Strickland*, 466 U.S. at 691, 104 S.Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). If counsel has reason to believe that pursuing certain evidence "would be fruitless or even harmful," a tactical decision not to investigate may indeed be reasonable. *See id.*

¶ 25 In the present case, counsel's failure to locate the third passenger in the truck does not rise to the level of an unreasonable act or omission. After finding that this witness's mother was either unable or unwilling to inform counsel of her son's whereabouts, counsel made a decision to move forward without this witness. Upon the state's motion for a continuance, defense counsel declined the opportunity to have more time to locate this witness and, instead, earnestly opposed the motion. Indeed, counsel may have hoped to deprive the state of any additional time to further develop its case against his client, apparently hoping that the circumstantial nature of the case would force an acquittal. In addition, counsel may have doubted the advantageousness of this witness's testimony. In explaining why he did not further pursue this witness, counsel stated that "we had no idea what [the witness] was going to say." Counsel may very well have feared that finding this individual would do his client more harm than good.

¶ 26 Although counsel's choice may have contributed to an undesired outcome, we cannot say that this conduct necessarily fell outside the range of reasonable professional assistance. Given the deference with which we view counsel's judgments, defendant has failed to demonstrate that, under the circumstances, the challenged action could not be considered sound trial strategy.

¶ 27 Even if we determined that counsel's performance was deficient under the first prong of the *Strickland* test, defendant has failed to satisfy the second prong of the test by demonstrating that he was prejudiced by the alleged deficiencies. Defendant asserts that the witness's testimony "would not only have affected the credibility of Matt Seal, with regard[ ] to ... Montoya's location within the vehicle, but would have provided the only testimony as to who actually fired the shots." However, in the course of counsel's motion for a new trial, this individual, once located, refused to come forward. As discussed above, the statements of this witness, offered through a defense investigator, constitute inadmissible hearsay. Hence, we cannot say that if counsel had been successful in locating this witness prior to trial, that the outcome of the trial would have been any different. For these reasons, defendant's claim for ineffective assistance of counsel must fail.

## III. DENIAL OF MOTION FOR DIRECTED VERDICT

¶ 28 Finally, defendant contends that the trial court erred in denying his motion for a directed verdict because there was insufficient evidence to support a verdict against him.

¶ 29 In reviewing the denial of a motion for a directed verdict based on a claim of insufficiency of the evidence, "[w]e will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989). Therefore,

a motion for a directed verdict made at the close of the state's case may be denied if the trial court finds that the state has established a "prima facie case against the defendant by producing 'believable evidence of all the elements of the crime charged.' " *State v. Emmett,* 839 P.2d 781, 784 (Utah 1992) (quoting *State v. Smith,* 675 P.2d 521, 524 (Utah 1983)). The evidence is to be viewed in the light most favorable to the state. *See Mahmood v. Ross,* 1999 UT 104, ¶ 16, 990 P.2d 933 ("When reviewing any challenge to a trial court's denial of a motion for directed verdict, we review the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the party moved against ...." (internal quotation omitted)).

¶ 30 In reviewing the evidence presented in this case, we conclude that there was sufficient evidence for the trial court to submit the case to the jury and, consequently, to support a verdict against the defendant.

¶ 31 At trial, the central issue before the jury was which of the three occupants in the truck fired the gun. In its case-in-chief, the state introduced evidence that included the following: (1) up to four shots were fired from the truck; (2) just prior to the shooting, defendant was seen leaning over the driver, staring at the victims' car, and yelling; (3) the boys heard two or three voices shouting gang references and derogatory remarks; (4) defendant was seated in the front passenger side of the truck; (5) it was stipulated that Russell Thornwall, the driver of the truck, was right-handed, and that the truck had a stick shift; (6) the truck was following behind the victims' car directly before the shooting and sped away immediately afterwards; (7) the trajectory of the bullet paths was slightly right to left; and (8) the location of shell casings found at the scene could have been used to infer that the shots were fired from the passenger side of the truck.

¶ 32 When evaluating a motion for a directed verdict " 'the court is not free to weigh the evidence and thus invade the province of the jury, whose prerogative it is to judge the facts.' " *Mahmood,* 1999 UT 104 at ¶ 18, 990 P.2d 933 (quoting *Mgmt. Comm. of Graystone Pines Homeowners Ass'n v.*

*Graystone Pines, Inc.,* 652 P.2d 896, 897 (Utah 1982)). Rather, the court's role is to determine whether the state has produced "believable evidence" on each element of the crime from which a jury, acting reasonably, could convict the defendant.

¶ 33 Although the evidence presented by the state in this case was largely circumstantial, "it has long been established" that the elements needed to make out a cause of action "may be proven by direct and by circumstantial evidence." *State v. Romero,* 554 P.2d 216, 217 (Utah 1976) (citing *State v. Richards,* 29 Utah 310, 81 P. 142 (1905)). "[I]f there is any evidence, however slight or circumstantial, which tends to show guilt of the crime charged or any of its degrees, it is the trial court's duty to submit the case to the jury." *State v. Hamilton,* 827 P.2d 232, 237 (Utah 1992) (evaluating the sufficiency of fingerprint evidence) (internal quotation omitted).

¶ 34 We cannot say that there was insufficient evidence to submit this case to the jury. In light of the evidence related above, we conclude that a reasonable jury could have found that the elements of the crime had been proven beyond a reasonable doubt. Thus, the trial court did not err in denying defendant's motion for a directed verdict.

¶ 35 In addition to arguing that there was insufficient evidence to prove that defendant was the shooter, defendant argues that the state did not produce evidence of his intent to kill the other two occupants in the car sufficient to support the two counts of attempted criminal homicide. Because defendant raises this argument for the first time on appeal, we decline to address it. *Espinal v. Salt Lake City Bd. of Educ.,* 797 P.2d 412, 413 (Utah 1990) ("With limited exceptions, the practice of this court has been to decline consideration of issues raised for the first time on appeal.").

## CONCLUSION

¶ 36 The trial court was correct in denying defendant's motion for a new trial based on newly discovered evidence. The proffered statements from the confidential witness and from Jason Thornwall constitute hearsay not within any exception. Therefore, the evidence would not be admissible and would not render a different result probable on retrial.

¶ 37 Defendant's ineffective assistance of counsel claim also fails. Defense counsel's decision to force the matter to trial prior to locating the third person in the truck was likely a tactical one and fell within the range of reasonable professional assistance. Moreover, even had defense counsel located the witness prior to trial, the witness's testimony, offered through a defense investigator, constitutes inadmissible hearsay and, thus, would not have altered the outcome of the trial.

¶ 38 Finally, the trial court correctly denied defendant's motion for a directed verdict. The state established a prima facie case against the defendant. Accordingly, the trial court properly submitted the case to the jury, and there was sufficient evidence to support the verdict.

¶ 39 We therefore affirm defendant's convictions on all counts.

¶ 40 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.