IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20110097-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (September 20, 2012) |
| David Steele Harrison, | ) | |
| | ) | 2012 UT App 261 |
| Defendant and Appellant. | ) | |

-----

Third District, West Jordan Department, 091403146
The Honorable Terry L. Christiansen

Attorneys:      Brittany D. Enniss and Daniel M. Torrence, Salt Lake City, for
                Appellant
                Mark L. Shurtleff and Andrew F. Peterson, Salt Lake City, for Appellee

-----

Before Judges McHugh, Voros, and Orme.

ORME, Judge:

¶1      Defendant appeals his convictions for three sex offenses:  rape, object rape, and forcible sexual abuse.  *See* Utah Code Ann. §§ 76-5-402, -402.2, & -404 (2008 & Supp. 2012).  Defendant contends that the trial court erred in denying his motions for directed verdict and arrest of judgment.  Defendant also asserts that the trial court erred in allowing evidence regarding the victim's sexual history and cognitive limitations.  We affirm.

¶2      The victim was 52 years old in 2009 when she visited a massage studio to get a massage to help alleviate pain caused by myriad health problems.  Due to the victim's

obesity and joint pain, her mobility was limited.  She could lift herself onto and off of a massage table only with great difficulty and the use of a chair.

¶3     On the victim's initial visit to the studio, Defendant was randomly assigned to be her massage therapist.  The victim testified that during this visit, Defendant "cupped his hand" over her breast for "a short time."[1]  The victim did not report this incident at the time.  She was again assigned to Defendant upon her second visit to the massage studio a few days later.[2]  During the second visit, Defendant did not inappropriately touch the victim, and she spoke with Defendant about her ongoing struggle with cancer.

¶4     When the victim returned to the studio for a third massage, she requested Defendant by name, although she later testified that she did not realize the person she requested was the same man who had been her massage therapist on the two prior visits.  During this visit, Defendant began massaging the victim's breasts.  He also massaged the victim's legs, "plac[ing] his hand in [her] vagina and . . . rubbing." Defendant asked the victim to position herself on her stomach, after which he digitally penetrated the victim's vagina from behind.  Defendant then inserted his penis into her vagina.  During this penetration, which lasted three to four minutes, the victim testified that she told Defendant that "it hurt" and asked him to "stop" or told him "no."

¶5     Upon returning home, the victim noticed that she was bleeding from her "privates" and told her mother what had happened.  Soon after, the victim reported the incident to the police.  Swabs taken from the victim confirmed the presence of Defendant's sperm in her vagina and on her anal area.

¶6     The victim also reported the conduct to the studio owner, who suspended Defendant and obtained a written statement from him.  Defendant's statement asserted that the victim made sexual advances during the third visit, asking Defendant to

---

[1]Defendant characterized this contact as being only for the purpose of repositioning the victim's breast to better access her pectoral muscles.  Except when otherwise specifically noted, we state the facts in the light most consistent with the jury's verdict. *See Chen v. Stewart*, 2004 UT 82, ¶ 78, 100 P.3d 1177.

[2]The victim testified that this was without her input.  The studio's records indicate that she specifically requested Defendant.

massage her breasts and genitals and grabbing his crotch. Defendant claimed to have complied with the victim's requests for intimate touching "out of compassion for her situation" because the victim pleaded, "Please, I'm dying of cancer." But in his statement, Defendant did not admit to having sexual intercourse with the victim.

¶7 Because the victim also had some cognitive limitations, Defendant filed a pretrial motion in limine seeking to exclude any evidence relating thereto. The State objected, explaining that it did not intend to use such evidence to show that the victim lacked the ability to consent, but only to show "that her actions and resistance were reasonable considering her personality and limitations." The trial court ruled that the evidence would be admissible but that the victim could only testify as to her special education courses, limitations on employment, and trouble with basic tasks due to her mental infirmities and physical limitations.

¶8 At trial, the victim explained that she did not ask Defendant to stop when he began to touch her chest because she "wasn't sure just how to respond to what he had done." The victim explained that she "ha[d] never been touched, [had] never been kissed, [and had] never had sex." Defendant did not object to these statements at trial.

¶9 At the close of the State's case-in-chief, Defendant moved for a directed verdict as to the forcible sexual abuse and object rape counts, arguing insufficiency of the evidence. The trial court denied the motion but noted that although it saw the case as "a close call," it believed there was sufficient evidence for a reasonable jury to find lack of consent beyond a reasonable doubt. The trial court also noted that the standard by which it evaluates a motion for a directed verdict is "certainly not proof beyond a reasonable doubt, which is the standard the jury has." The jury later returned a guilty verdict on all charges, and Defendant filed a Motion to Arrest Judgment that was also denied. Defendant appeals.

¶10 We first examine Defendant's claim that the trial court erred when it denied his motion for a directed verdict and, later, his motion to arrest judgment.[3] The only

---

[3]The State contends that Defendant failed to adequately marshal the evidence and, thus, that we should decline to consider the merits of Defendant's arguments. When challenging the sufficiency of evidence, the challenging party has a duty to

(continued...)

element of the crimes that was contested at trial—and the element on which Defendant sought a directed verdict—was lack of consent. Our "standard of review of a directed verdict is the same as that imposed upon a trial court." *Merino v. Albertsons, Inc.*, 1999 UT 14, ¶ 3, 975 P.2d 467 (citation and internal quotation marks omitted). Additionally, our standard for reviewing motions for a directed verdict and to arrest judgment are the same. *Cf. State v. Workman*, 852 P.2d 981, 984 (Utah 1993) ("The standard for determining whether an order arresting judgment is erroneous is the same as that applied by an appellate court in determining whether a jury verdict should be set aside for insufficient evidence."). That standard has been explained as follows: "[W]e will uphold the trial court's [denial of a motion for directed verdict or to arrest judgment] if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (first alteration in original) (citation and internal quotation marks omitted).

¶11 Defendant contends that the trial court applied a standard that was too narrowly focused and, as a result, that his motion was denied despite a lack of sufficient evidence. Defendant also points out that the trial court, in considering his motion for directed verdict, characterized the State's evidence on the issue of consent as "certainly not proof beyond a reasonable doubt." Defendant seemingly attempts to use the trial court's apparent trepidation about the weakness of the State's case as an indication that it did not employ the correct standard, that is, if the court was truly attempting to identify whether a reasonable jury *could* conclude beyond a reasonable doubt that there was no consent, the trial court would not have denied the motion while in the same breath recognizing that the State's evidence was "certainly not proof beyond a

---

[3](...continued)
"marshal all record evidence that supports" a court's ruling that there is sufficient evidence. Utah R. App. P. 24(a)(9). We consider the marshaling requirement a very important obligation for appellants. While Defendant does seem to claim in his brief that the State failed to present any evidence as to the consent issue, he nonetheless sets about to marshal the relevant evidence, including the testimony tending to show that the victim did not consent. We conclude that Defendant has satisfied his marshaling duty.

reasonable doubt." However, a careful reading of the court's words, in context, shows that the trial court was recognizing an entirely different point in making this statement.

¶12    In discussing the motion for directed verdict, the trial court correctly explained that the applicable standard required denial where reasonable minds *could* conclude beyond a reasonable doubt that the elements of the crime have been met. *See id.* The court then clarified that the analysis it was engaging in at that time was with reference to a standard that was "certainly not proof beyond a reasonable doubt, which is the standard the jury has [to apply in making its decision]." Thus, the court was only observing that in order to deny the motion, it did not need to conclude that the State had proved the lack of consent beyond a reasonable doubt, but only that the jury could reasonably so conclude on the facts then of record. And contrary to Defendant's erroneous interpretation of the court's words, the trial court did not conclude that the State's evidence was "certainly not proof beyond a reasonable doubt" but rather that the standard it employed to rule on the motion for directed verdict was "certainly not proof beyond a reasonable doubt."

¶13    Satisfied that the court applied the correct standard in making its determination, we will not disturb the court's conclusion that there was sufficient evidence for the consent issue to go to the jury. The victim testified that she either told Defendant that "it hurt" and to "stop" or told him, "No." The victim recounted that she held her arms in such a way as to stop Defendant from continuing to touch her inappropriately. The victim testified that she thought she should scream and that in her mind she was screaming but no sound came out. Nonetheless, at one point Defendant asked her to be quiet, so as not to disturb other customers in neighboring rooms.

¶14    Defendant contends that the victim's testimony was inherently unbelievable. *See State v. Robbins*, 2009 UT 23, ¶ 16, 210 P.3d 288 (holding that where "testimony is inherently improbable, the court may choose to disregard it"). We agree that there were some inconsistencies in the victim's testimony. The victim gave conflicting statements about whether she protested the penetration. Defendant also contends that the following parts of the victim's account make her story highly improbable: her fear of screaming for help despite the thin walls and occupied neighboring rooms; Defendant penetrating the victim without her repositioning herself to accommodate the sexual activity; and her insistence that she did not consent despite requesting Defendant by name even after believing that he had touched her inappropriately on a prior visit. While we recognize that this was not a case with overwhelming evidence

demonstrating a complete lack of consent, the victim's testimony was not so inherently unbelievable that it should have been categorically rejected. And so long as a reasonable jury could determine that the victim did not consent, a motion for directed verdict focused on consent will be unavailing. *See Montoya*, 2004 UT 5, ¶ 29. Considering the evidence of record, we agree that a reasonable jury could properly conclude that there was no consent, as it in fact did.

¶15 Next, Defendant contends that the victim's mention in her testimony that she was "shy," "never dated," and was a "virgin" violated rules 404(a) and 412 of the Utah Rules of Evidence. Defendant failed to preserve this issue at trial. In order to preserve an issue for appellate review, "the issue must be sufficiently raised to a level of consciousness before the trial court and must be supported by evidence or relevant legal authority." *State v. Prawitt*, 2011 UT App 261, ¶ 13, 262 P.3d 1203 (citation and internal quotation marks omitted). *Accord State v. Brown*, 856 P.2d 358, 361 (Utah Ct. App. 1993).

¶16 Defendant did not object to the victim's two references to her being a virgin, nor did he object during the prosecutor's reference to the same in closing argument. Defendant claims that because trial counsel objected to a line of questioning regarding the victim's *religious beliefs* concerning premarital sex, counsel adequately preserved this issue. However, the victim's religious beliefs regarding premarital sex are wholly distinct from her social and sexual history. Defendant's objection to testimony regarding the victim's beliefs did not raise Defendant's rule 412 concerns regarding the victim's social and sexual history to a "level of consciousness" that would have prompted the trial judge to consider it. *Prawitt*, 2011 UT App 261, ¶ 13.

¶17 "When a party fails to preserve an issue for appeal, we will address the issue only if (1) the appellant establishes that the [trial] court committed 'plain error,' (2) 'exceptional circumstances' exist, or (3) in some situations, if the appellant raises a claim of ineffective assistance of counsel in failing to preserve the issue." *State v. Low*, 2008 UT 58, ¶ 19, 192 P.3d 867 (citation omitted). Defendant claims that the plain error doctrine provides this court with an avenue to consider this issue, even if unpreserved. In order to show plain error, Defendant must prove that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for [Defendant]." *State v. Hassan*, 2004 UT 99, ¶ 10, 108 P.3d 695 (citation and internal quotation marks omitted). The State argues that Defendant inadequately briefed his plain error

argument. We disagree and will consider the argument's merit. Having done so, however, we are not persuaded that any error would have been obvious to the trial court.

¶18 In order for an error to be obvious, by definition, it must be clear. Quite simply, Defendant fails to demonstrate how the law in this area would have been clear to the trial court. While Defendant's brief discusses the purpose behind rule 412 and provides some examples of its application, Defendant recognizes the essential lack of clarity in the law when he concedes that "Utah courts have never specifically addressed whether evidence of virginity is irrelevant and inadmissible under Rule 412." It follows that any error in this regard committed by the trial court would not have been obvious.

¶19 Finally, Defendant asserts that the court should not have allowed evidence regarding the victim's virginity and cognitive disabilities under rule 404. *See* Utah R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove than on a particular occasion the person acted in conformity with the character or trait."). Defendant's motion before trial to prevent the State from presenting evidence that the victim had poor social skills, lived at home with her parents at age 52, and attended "special ed classes" in high school, was denied. The State maintained that it had no intention of presenting such evidence as a means of asserting and establishing the victim's inability to consent. *See* Utah Code Ann. § 76-5-406(6) (2008) (providing that rape may occur when "the actor knows that as a result of mental disease or defect, the victim is at the time of the act incapable either of appraising the nature of the act or of resisting it"). Instead, the State sought to introduce such evidence for the limited purpose of showing "that [the victim's] actions and resistance were reasonable considering her personality and limitations." The trial court found this to be proper.

¶20 "We grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion. An abuse of discretion may be demonstrated by showing that the district court relied on an erroneous conclusion of law or that there was no evidentiary basis for the trial court's ruling." *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 32, 221 P.3d 256 (citations, brackets, and internal quotation marks omitted).

¶21 Rule 404(a) prohibits a party from introducing evidence about a person's character "to prove that on a particular occasion the person acted in conformity with the character or trait." Utah R. Evid. 404(a). In *State v. Archuleta*, 747 P.2d 1019 (Utah 1987),

the Utah Supreme Court approved the use of evidence regarding the victim's mental disabilities as it pertained to her lack of consent to sexual acts to show "that under the circumstances of this case, her resistance was reasonable." *Id.* at 1022. Defendant argues that the State introduced such evidence to show that the victim acted in conformity with her character and therefore did not consent. However, we do not see that any such argument was presented by the State and agree that *Archuleta* is instructive in this case.

¶22    The State did not argue that the victim's "characteristic" of having cognitive disabilities indicated that she would not have consented. Rather, it argued that the victim's limitations help explain what might otherwise appear to be peculiar behavior for a non-consenting victim, namely, failing to more aggressively resist Defendant's advances or to call for help. Here, the victim explained that she was frightened and had a difficult time processing what was happening. Meanwhile, Defendant sought to undercut the victim's contention that she withheld consent. The State established that the victim was somewhat cognitively limited to counter Defendant's argument that the victim acted inconsistently with what might be expected from a non-consenting party. Evidence of the victim's mental limitations used in such a way was not violative of rule 404(a), and considering the broad discretion given to trial courts as to such matters, we have no basis on which to reverse the trial court's decision in this case.

¶23    Affirmed.


_____
Gregory K. Orme, Judge


                                                    -----


¶24    WE CONCUR:


_____
Carolyn B. McHugh,
Presiding Judge

_____
J. Frederic Voros Jr.,
Associate Presiding Judge