2014 UT App 263

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
JULIUS OCHIENG OLOLA,
Defendant and Appellant.

Memorandum Decision
No. 20130435-CA
Filed November 14, 2014

Third District Court, Salt Lake Department
The Honorable Randall N. Skanchy
No. 121909990

Lacey C. Singleton and Nathalie S. Skibine,
Attorneys for Appellant

Sean D. Reyes and Daniel W. Boyer, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGES JOHN A. PEARCE and KATE A. TOOMEY concurred.

DAVIS, Judge:

¶1 Julius Ochieng Olola appeals his convictions of driving under the influence of alcohol and related charges. We affirm.

¶2 Olola first argues that the evidence was insufficient to support a determination beyond a reasonable doubt that he operated a motor vehicle—an element of each offense of which he was convicted. Olola argues that the trial court should have granted his motion for a directed verdict because the evidence supporting the jury's determination that he operated a motor vehicle was "sufficiently inconclusive or inherently improbable that

reasonable minds must have entertained a reasonable doubt that [Olola] committed the crime of which he was convicted." *See State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94.

> In reviewing the denial of a motion for a directed verdict based on a claim of insufficiency of the evidence, [w]e will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt.

*State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (alteration in original) (citation and internal quotation marks omitted).

¶3     The primary evidence that Olola operated a motor vehicle came from a witness who testified that he was standing two to four feet from Olola's van when he saw Olola stagger toward the van, climb in, and turn it on. The witness testified that while attempting to leave his parking spot, Olola first hit the car in front of him, then backed up and hit the car behind him. The witness then watched Olola drive to a nearby gas station and hit a light pole in the gas station parking lot.

¶4     There were several inconsistencies between the witness's testimony at trial and the written statement he filled out immediately following the incident. In the written statement, the witness did not mention the light pole, claimed that Olola hit the cars while trying to park rather than while leaving his parking spot, stated that Olola hit the car behind him before he hit the car in front of him, and claimed to have witnessed the incident from fifty feet away rather than the two to four feet he recalled at trial.

¶5     Relying on these inconsistencies, Olola asserts that the witness's testimony was so inherently improbable that it could not support the jury's verdict. "Substantial inconsistencies in a sole

witness's testimony . . . can create a situation where the prosecution cannot be said to have proven the defendant's guilt beyond a reasonable doubt . . . ." *State v. Robbins*, 2009 UT 23, ¶ 17, 210 P.3d 288. However, a jury's credibility determinations may be reevaluated on this basis only "where (1) there are material inconsistencies in the testimony *and* (2) there is no other circumstantial or direct evidence of the defendant's guilt. The existence of *any* additional evidence supporting the verdict prevents the [trial] judge from reconsidering the witness's credibility." *Id.* ¶ 19 (emphasis added).

¶6    Here, the State presented physical evidence of damage caused to the two cars that Olola allegedly hit while trying to get out of his parking spot. Photographs provided at trial depicted damage matching the height and shape of Olola's vehicle. This physical evidence was sufficient to corroborate the witness's testimony. Thus, reevaluation of the jury's verdict by the trial court on the basis of inherently improbable witness testimony would have been inappropriate. *See id.* Although the various inconsistencies in the witness's testimony certainly undermine his credibility, his credibility was not "so weak that no reasonable jury could find [Olola] guilty beyond a reasonable doubt." *See id.* ¶ 18.

¶7    Olola next argues that the trial court erred in overruling his objection to the prosecutor's statement, "Why would people at the [gas station] say, Don't let that guy drive?" Olola asserts that this statement, made during the prosecutor's rebuttal closing argument, improperly argued facts not in evidence. "We review a trial court's handling of claimed prosecutorial misconduct for an abuse of discretion." *State v. Kozlov*, 2012 UT App 114, ¶ 28, 276 P.3d 1207 (citation and internal quotation marks omitted).

¶8    In determining whether alleged prosecutorial misconduct merits reversal, we must determine whether "the remarks call[ed] to the attention of the jurors matters which they would not be justified in considering in determining their verdict" and whether "under the circumstances of the particular case, [the jurors were]

probably influenced by those remarks." *State v. Ross*, 2007 UT 89, ¶ 54, 174 P.3d 628 (citation and internal quotation marks omitted). "Counsel for both sides have considerable latitude in their closing arguments. They have the right to fully discuss from their perspectives the evidence and all inferences and deductions it supports." *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989). Nevertheless, counsel may not argue or allude to matters not introduced into evidence at trial. *State v. Larrabee*, 2013 UT 70, ¶ 23, 321 P.3d 1136; *State v. Hopkins*, 782 P.2d 475, 478 (Utah 1989). "In assessing whether there was prejudicial error in the prosecutor's comments, we will consider the comments both in context of the arguments advanced by both sides as well as in context of all the evidence." *State v. Bakalov*, 1999 UT 45, ¶ 56, 979 P.2d 799.

¶9     We agree with the State that the prosecutor's reference to the statements of the gas station employees did not improperly influence the jurors or call to their attention matters they were not justified in considering. *See Ross*, 2007 UT 89, ¶ 54. Although no testimony was admitted at trial indicating that the gas station employees specifically said, "Don't let that guy drive," the employees' concern for Olola's driving was implicit in the testimony that was presented. After witnessing the accident, the primary witness reported the accident to employees at the gas station. The employees then approached an officer at the gas station and repeated the information they had learned, which led the officer to investigate Olola. The officer testified that the employees' statements caused him to be concerned for "public safety" and prompted him to pull behind Olola's vehicle so that Olola could not leave the parking lot. Although the court did not permit the officer to testify to hearsay statements made by the gas station employees, it was clear from the officer's testimony that his concern for the safety risk posed by Olola arose from his conversation with the employees. Thus, the fact that the gas station employees wanted the officer to prevent Olola from driving could be fairly inferred from the officer's testimony and was not, under the facts of this case, impermissibly addressed by the prosecutor during closing arguments. *See Dibello*, 780 P.2d at 1225.

¶10   Finally, Olola takes issue with the prosecutor's statement during closing argument that the jury should convict Olola in order to "nip" his conduct "before somebody gets killed." Olola asserts that this statement was "inflammatory and inappropriately appealed to passion and prejudice." *See State v. Campos*, 2013 UT App 213, ¶ 49, 309 P.3d 1160. Because defense counsel did not object to the prosecutor's statement at trial, we review this argument for plain error. *See State v. Cram*, 2002 UT 37, ¶ 4, 46 P.3d 230 (recognizing plain error as an exception to the preservation rule). In order to prevail on grounds of plain error, an appellant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

¶11   "[R]eference to the jury's societal obligation is inappropriate when it suggests that the jury base its decision on the impact of the verdict on society and the criminal justice system rather than the facts of the case." *Campos*, 2013 UT App 213, ¶ 51 (citation and internal quotation marks omitted). The prosecutor's statement in this case was not as pointed as improper statements identified in other cases—e.g., statements urging the jury to become the victim's advocate, *see State v. Wright*, 2013 UT App 142, ¶ 41, 304 P.3d 887, or to disregard the rights of the individual defendant in favor of a duty to the criminal justice system, *see Dunn*, 850 P.2d at 1224. Nevertheless, the statement does appear to suggest that the jury base its decision on an obligation to society rather than the facts of the case. *See Campos*, 2013 UT App 213, ¶ 51. The statement was therefore inappropriate.

¶12   However, the prosecutor's statement was not so prejudicial as to require reversal. First, as a single phrase within the prosecutor's rebuttal argument, this statement appears to be fairly innocuous, *see Wright*, 2013 UT App 142, ¶ 42; the fact that neither defense counsel nor the trial court took issue with the statement at the time it was made further supports this conclusion, *see State v.*

*Redcap*, 2014 UT App 10, ¶ 33, 318 P.3d 1202 ("The failure of defense counsel to object to statements made by a prosecutor during the closing is a matter to which we attach significance. It is not only a sign that what was said sounded less exciting at trial than appellate counsel now would have it seem, but it is also some indication that the tone and manner of the now challenged aspect of the prosecutor's argument were not unfairly prejudicial." (citations and internal quotation marks omitted)). Additionally, any impact the statement may have had was mitigated by the jury instructions, which directed the jury that the lawyers' statements were not evidence, that the jury should decide the case based only on the evidence presented, and that the jurors "should not use this case as a forum for correcting perceived wrongs in other cases or as a means of expressing individual or collective views about anything other than the guilt or innocence of Mr. Olola." *See Dunn*, 850 P.2d at 1225 (determining that jury instructions helped to mitigate the effect of an inappropriate statement by the prosecutor); *Wright*, 2013 UT App 142, ¶ 42 (same). Accordingly, we conclude that any error in the prosecutor's statement was harmless beyond a reasonable doubt. *See Wright*, 2013 UT App 142, ¶ 41 & n.6 (employing the harmless-beyond-a-reasonable-doubt standard in the prosecutorial misconduct context).

¶13   In sum, we determine that the trial court did not err in denying Olola's motion for directed verdict, because the witness's testimony was not inherently improbable and was corroborated by additional evidence. We further determine that the prosecutor's reference to the gas station employees' statements did not impermissibly refer to facts not in evidence. Finally, although the prosecutor's statement urging jurors to convict Olola "before somebody gets killed" was improper, it was harmless beyond a reasonable doubt. Accordingly, we affirm Olola's convictions.

———