2015 UT App 164

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
GERBER FLORES,
Defendant and Appellant.

Memorandum Decision
No. 20131103-CA
Filed June 25, 2015

Eighth District Court, Vernal Department
The Honorable Clark A. McClellan
No. 131800025

Colleen K. Coebergh, Attorney for Appellant

Sean D. Reyes and Christopher D. Ballard, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Memorandum
Decision, in which JUDGES GREGORY K. ORME and
STEPHEN L. ROTH concurred.

VOROS, Judge:

¶1      A jury convicted Gerber Flores of aggravated burglary, aggravated kidnapping, three counts of child kidnapping, and five counts of aggravated sexual assault, all first degree felonies. The jury also convicted Flores of attempted forcible sodomy, a second degree felony, and three counts of domestic violence in the presence of a child, class B misdemeanors. Flores appeals the three child kidnapping convictions. We affirm.

¶2      "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citation and internal quotation marks omitted). Here, for approximately thirty-six hours in December 2012—from Thursday evening until Saturday

morning—Flores detained a mother (Mother) and her children in Mother's apartment.

¶3     At trial, Mother testified that she had three children. At the time of the incident, Mother's children were approximately eight years old (Older Son), seven years old (Daughter), and four years old (Younger Son). Mother also testified that she had been in a relationship with Flores beginning in September 2012 but that she had ended it. On the same day that Mother ended the relationship, Flores returned and gained entry to her apartment. Mother explained, "We're just getting ready for bed. We're all upstairs, just getting everything ready just to go to bed." Then she "heard somebody coming up the stairs" and saw Flores. He barricaded himself and Mother in her bedroom.

¶4     Over the next thirty-six hours Flores repeatedly sexually and physically assaulted Mother. Mother testified that on the first night of the thiry-six-hour ordeal, Flores wanted to argue about their relationship. The prosecutor asked Mother, "[D]o you know what your children are doing at this point?" Mother responded, "They were in bed. So I was trying to tell [Flores], you know, 'Keep it down. They are sleeping.'"

¶5     On Friday morning Flores still had Mother barricaded with him in her room. Mother pleaded with him to let her out so that she could feed her children, saying, "I need to go feed my children," "I hear them downstairs. They're hungry." Mother explained that she told Flores several times that she wanted to leave "because [she] needed to go to [her] children to herd them up." Crying, she implored him, "You know, you might be mad at me, but you should not do this to my kids." Flores relented and let her go downstairs to feed her children, but he followed and "actually stood guard" to make sure she did not leave. He then forced her back upstairs; Mother complied because she "did not want [her] children to see him get violent again."

¶6     Later that day, while Flores showered, Mother tried to gather up shoes for herself and her children so they could leave.

When asked if she intended "to take [her] children with [her]," she replied, "Take my children. That's why I was trying to get all our shoes, because this is winter." But Flores got out of the shower and prevented Mother from leaving.

¶7     On Saturday morning, while Flores was still in bed, Mother went downstairs and "told [her] kids, . . . 'We're going to get ready. We're going to go to the store.'" Mother then went back upstairs and told Flores that he needed to leave. Flores responded by throwing Mother onto the bed. Older Son, who by this time "had had enough," approached Flores with a knife. Mother took the knife away from Older Son, and Flores grabbed a utility knife and "ran after all [of Mother's] children with [it]."

¶8     The jury also heard recorded interviews of Older Son and Daughter. Older Son stated that Flores trapped Mother in her bedroom, that Flores had a utility knife in the bedroom, and that Flores told him that if Mother "told us to call the police or [if] we were outside, he would come out and slit our throats and then he would throw us into the hole in the wall." Older Son further explained that Flores kept "threatening me that he was going to kill all of us if I dared to go outside."

¶9     At the close of the State's evidence, Flores moved for a directed verdict. Specifically, Flores asked "for a directed verdict on at least two of the counts of kidnapping. [Younger Son] was very—was hardly mentioned at all . . . and then I'm going to ask also with regards to [Daughter]." Flores argued that "there's no evidence whatsoever of actually where [Younger Son] was at all during the whole time." But then he went on to say, "I think . . . [M]other said at one time that [Younger Son] was in the house." Flores acknowledged that he did not seek a directed verdict with respect to Older Son but argued that the threats he made to Older Son did not prove he intended to detain Younger Son and Daughter also. The trial court denied the motion on the ground that "the jury could believe . . . [M]other was restrained to the bedroom, and that the three children were downstairs for the most part," and "that at this stage of the proceeding there is

sufficient evidence to go forward on all counts on all three children."

¶10 On appeal, Flores contends that the trial court erred in denying his request for a directed verdict on the three child kidnapping counts. Flores raises two arguments in support of this contention. First, he argues that the State presented no evidence that Younger Son was even present during the incident. Second, he argues that the State presented insufficient evidence to prove that Flores kidnapped the three children independently from the kidnapping of Mother.

¶11 "We review a trial court's ruling on a motion for directed verdict for correctness." *State v. Gonzalez*, 2015 UT 10, ¶ 21, 345 P.3d 1168. When a trial court denies a motion for a directed verdict based on a claim of insufficient evidence, "[t]he evidence is to be viewed in the light most favorable to the [S]tate." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183. "[W]e will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *Id.* (citation and internal quotation marks omitted).

¶12 Flores first contends that the trial court erred in denying his request for a directed verdict with respect to the kidnapping of Younger Son. Flores argues that during trial "no particulars were provided" as to Younger Son and that "it constitutes an *unreasonable inference* to conclude" that Flores kidnapped Younger Son "when there is not a scintilla of evidence that [Younger Son] was even present during the incident." The State responds that Flores did not preserve his argument at trial and on appeal does not argue any exception to the preservation requirement.

¶13 "As a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11,

10 P.3d 346. "When a party fails to present an issue to the [trial] court, and instead raises the issue for the first time on appeal, we require that the party articulate an appropriate justification for appellate review." *State v. Moa*, 2012 UT 28, ¶ 24, 282 P.3d 985 (citation and internal quotation marks omitted). Appropriate justifications for appellate review include plain error, exceptional circumstances, and ineffective assistance of counsel. *Oseguera v. State*, 2014 UT 31, ¶ 15, 332 P.3d 963. "Under the invited error doctrine, however, we have declined to engage in plain error review when counsel made an affirmative statement that led the court to commit the error." *Moa*, 2012 UT 28, ¶ 24.

¶14    In this case, Flores invited any error the trial court made in denying his request for a directed verdict with respect to Younger Son. In the course of arguing the motion, Flores asserted that "there's no evidence whatsoever of actually where [Younger Son] was at all during the whole time." But later in the same discussion he backed off of this assertion, acknowledging, "I think . . . [M]other said at one time [Younger Son] was in the house." Thus, Flores led the trial court to believe that some evidence existed from which a jury could reasonably infer that Younger Son was present during the incident. Accordingly, Flores invited any possible error on the part of the trial court in not directing a verdict on the basis that no evidence showed Younger Son's presence during the crime.

¶15    Flores next contends that the trial court erred in denying his request for a directed verdict as to all the children. Flores argues that the State presented insufficient evidence to prove that he "seized, confined, detained, or transported" Younger Son without consent. And he argues that no evidence showed that Older Son or Daughter "were locked in" during the incident. On the contrary, he maintains that while he detained Mother in the bedroom, the children "were left to the rest of the house, and at liberty to move as they wished."

¶16    The State responds that Flores did not preserve his argument with respect to Older Son. We agree. When Flores

requested a directed verdict, he did so only with respect to Younger Son and Daughter, clarifying that his request did not include Older Son, specifically stating, "I'm not asking for him." Because Flores did not preserve his sufficiency challenge with respect to the kidnapping of Older Son, and because he does not "articulate an appropriate justification" for reviewing his unpreserved claim, *Moa*, 2012 UT 28, ¶ 24, we decline to address it, *Holgate*, 2000 UT 74, ¶ 11. Flores did, however, preserve his sufficiency challenge with respect to the kidnapping of Daughter and Younger Son.

¶17 A person is guilty of child kidnapping if he or she "intentionally or knowingly, without authority of law, and by any means and in any manner, seizes, confines, detains, or transports a child under the age of 14 without the consent of the victim's parent." Utah Code Ann. § 76-5-301.1 (LexisNexis 2012).

¶18 Here, Older Son stated that Flores threatened to kill "all of us" if any of the children dared to go outside. Older Son also stated that Flores threatened to "slit our throats" if the children called the police or went outside. Mother testified that at one point during the ordeal Flores grabbed a utility knife and chased "all of [her] children" with it. Viewing this evidence and all reasonable inferences drawn from it in the light most favorable to the State, we conclude that sufficient evidence "exists from which a reasonable jury could find . . . beyond a reasonable doubt" that Flores kidnapped Daughter and Younger Son. *See State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (citation and internal quotation marks omitted).

¶19 True, no evidence establishes that Flores physically detained any of the children in the same way he physically detained Mother. But under our statute, the confinement or detention of a child under fourteen may be accomplished "by any means and in any manner." Utah Code Ann. § 76-5-301.1. Thus, our supreme court has opined in dicta that a kidnapping may occur where a child is "lured away by a deceptive promise and without the consent of the child's parent or guardian." *State*

*v. Strunk*, 846 P.2d 1297, 1300 (Utah 1993). Further, given the inclusive scope of the statutory text, we agree with the Missouri Court of Appeals that "[i]t is not necessary that actual violence occur for a kidnapping to be committed. Appeals to fear, such as a threat to kill or do bodily harm[,] are sufficient." *State v. Van Vleck*, 805 S.W.2d 297, 299 (Mo. Ct. App. 1991) (citation omitted). We readily conclude that confining or detaining a child "by any means and in any manner" may include threatening the child with physical harm. *See* Utah Code Ann. § 76-5-301.1. Here, Flores confined or detained all three of Mother's children when he threatened to slit their throats if any of them went outside.

¶20    In sum, because Flores failed to preserve his sufficiency challenge as to Older Son, and articulated no exception to the preservation requirement, we decline to review his unpreserved claim. In addition, the trial court committed no error in denying Flores's motion for a directed verdict with respect to his kidnapping of Daughter and Younger Son.

¶21    We accordingly affirm Flores's three child kidnapping convictions.

———————